Begin our morning with the case of Cumberland Mutual Fire Insurance Company v. Express. Good morning, Your Honors. My name is David Oppenheim, and I'm here representing Express Products, the appellant in these cases. Keep your voice up, please. Sure. I apologize. Your Honors, in sum, this is a case that should never have gotten off the ground and should have been dismissed at several points along the way. There are three independent bases where the district court... Mr. Oppenheimer, please, before you go into that, if you will, I want to know whether we have jurisdiction because of the filing of your notice of appeal late. Your Honor, I don't believe it was. What happened was this. An order was issued on September 1st of 2011, I believe, contemplating that a memorandum order would follow. The memorandum order followed on September 22nd within the 30 days allowed. On September 1st, when you looked at that order, were you confused about the outcome of the case? I was confused about whether that order was the last act by the district court judge or whether the district court judge intended to do more on the case. How could you be confused? What more did you expect? It said you're lost, right? And it also said further action was going to be taken. Not that order. It didn't say that. It says supporting memorandum is forthcoming. Okay. And it said the supporting memorandum was forthcoming. And then the supporting memorandum came. And at the end of that order, it said a further order is to follow. We're not at September 22nd. I'm still at September 1st, right? On September 1st, you look at the order. The order on with regard to excuse me, with regard to both Maryland and Cumberland, you lose. Yes, it does. All right. You're not confused about that. It says a supporting memorandum is forthcoming. What does that have to do with whether or not this is an order upon which you have to act? Well, your honor, if that was all that existed in a vacuum, perhaps it would be non confusing. And perhaps it would be something obligating us to act, but it does not exist in a vacuum. Okay. You're saying that something happened within the 30 day period that affected your view as to the September 1 order? That's correct. How so? The September 22nd memorandum order was issued and specifically it said at the end of it, an appropriate order is to follow. And our conclusion based on that was that the court intended to enter a unified judgment, like a clerk's judgment order that would then start the clock running. That never happened. Why did you file? What was ambiguous, Mr. Oppenheim? What was ambiguous about the led you to believe that you had won or that there was still something open? The district court had said very, very unambiguously and clearly that the Cumberland people had prevailed. And again, your honor, I would agree with you if that was all that had happened, but it did happen. Well, no, on September 22nd, another. But Judge Tucker could not have added anything to that order without having violated the rules of court. You cannot put your reasoning in the order. You can't put the opinion in the order. You can only have a separate, distinct order and then have an opinion, if it is desired, to explain how that order came about. And all it said is that a memorandum will follow. Well, the memorandum is something else issued by the trial court within the 30-day period after September 1st, when there is no question the trial court still had jurisdiction to modify or reissue its order. And the September 22nd memorandum indicated that the court intended to do just that. Well, you have nine more days from our view. I'm sorry, Judge Garth. Go ahead. No, I was just going to say you had something like nine more days to file a notice of appeal then. That was still within the appeal time. September 21st, and it wasn't until October the 3rd that your appeal time ran out. Isn't that so? Well, again, if we acknowledge or if we take the view that the September 1st order ran the 30 days and nothing stopped that 30 days from running, our view is that by drafting the September 22nd order the way Judge Tucker did, it indicated that a further modified judgment order or unified judgment order was going to be forthcoming that would then start the clock. All right, let's move on to the merits in the event we do have jurisdiction. Did you reserve time for rebuttal? I did. Three minutes. I'm sorry, Your Honor. I should have said that at the outset. Is that all right, Judge Greenway? Judge Garth, we'll move to the merits. I think we understand your position regarding the orders. Thank you, Your Honor. With regard to the merits, and I guess before I get there, my last point on jurisdiction is let's not forget that these are unified appeals. There are two different appeals in each of the cases, the second one of which being from the request for Rule 60 relief based on this essential error in the memorandum order that the district court admits exists. So I would posit that in any event the court has jurisdiction at the very least to consider the appeal from that order. Turning to the merits in the case, and I want to use merits loosely here because our whole position is that we are not the party that should have been made to fight this case. The case was fatally fled from the outset because it was missing necessary and indispensable parties, i.e. the underlying plaintiffs. Was your claim ever formally assigned to the plaintiffs? No, there is no assignment in this case. Why are you not the real party in interest? Well, we're not the real party in interest, and this is, I guess, the third stop along the way in terms of what reasons that this case should not have proceeded, and that is that under the settlement agreement with the underlying plaintiffs, while there is no assignment of rights, what there is is a covenant not to execute. They've essentially agreed not to collect the judgment in the underlying case. Right, they're going to look solely to insurance proceeds. Right. So how does that, I mean, you're here, you filed an appeal, why should we suddenly say, oh, of course, you're not the ones that should be prosecuting? And didn't this just arise after the settlement, which was after the district court order? The settlement was actually before the district court order. The settlement came about, I want to say a couple months before because the district court order did address and deny our request for dismissal based on the settlement. In March, right, the March order. Right, right. And essentially, there are two things at play in one of these coverage actions. There's the obligation of the insurer to provide a defense in an ongoing underlying case, the obligation of the insurer to provide indemnity for a judgment. With respect to the indemnity piece, the covenant not to execute means that, from our perspective, it really doesn't matter how the coverage case comes out. Either there's coverage where the underlying plaintiffs who've taken on the responsibility of fighting for coverage and are doing so out in Illinois, either they win, in which case the insurers have to pay them, or they lose, in which case the insurers don't have to pay them. But either way, it doesn't affect us. Do you have an obligation to repay costs of defense to Maryland? We do not. There is no contract contractual provision within the policy that would obligate us to do that. I know that that's something that they've posited hypothetically might create a case or controversy in the briefing here. But the fact is that's not released that they've ever sought in this case. It's not something they've asked for from Judge Tucker. And indeed, it's not something that Judge Tucker's order provides for. So I think that's a non-starter. And on the flip side, we're not seeking reimbursement of any defense costs because, as Your Honor indicated, Maryland elected to provide such a defense under their reservation of rights. And obviously, there's no issue about ongoing defense costs because the underlying case is over. So ultimately, at the time the order in the district court was entered, we had no further interest in the outcome. And under Article III principles, that meant that there was no case or controversy among the parties in the courtroom, and the case should not have proceeded at that point. I'd like to also back up, if I may, because there were two points prior to that where I think that the case should have been dismissed. The first was right off the bat because under this court's jurisprudence most recently in the Murray decision in 2011, the courts confirmed that underlying tort plaintiffs have a real and separate and independent interest in insurance coverage disputes. And they were not here. They should have been here under Rule 19, certainly under the logic of Murray. And I think that that is underscored by what else is going on here because obviously they've got their own coverage actions that I would imagine they're going to take the position that this case doesn't affect them, doesn't bind them. And in fact, the United States Supreme Court in a case called Semtec versus Lockheed Martin, a case that came out in 2001, it holds that the is whatever the preclusive effect of the same judgment issued by a court of the state where the federal court sits, which is in this case Pennsylvania. Let me back up a minute on your statement that the plaintiffs have a real interest. Their interest really is only a financial one. Isn't that correct? Their interest is in Strictly dollars and cents. Well, I mean, I think that's all anybody's interest in insurance coverage. They could have a property interest if you totally assigned it. They would have a right and ownership interest. If they only have a financial interest, doesn't Treesdale foreclose your argument that their interest is substantial enough to require their joinder? I think if that were the case, then it would also have foreclosed the result in Murray. Murray, of course, was a 2011 standing case in which this court was asked to harmonize its decisions in Treesdale and its prior decision in Rousher. It's interesting to note that the Treesdale court never mentioned Rousher, didn't discuss Rousher. And Rousher squarely stands for the proposition that I'm advancing, that the injured party has a separate and independent substantial right in insurance coverage. Are you saying that was the holding of Murray and Rousher? Because to my mind, it's DICTA. I think it is certainly the holding of Rousher. I think it's the holding in Murray as well, that the underlying plaintiff has standing to separately be in the courtroom and litigating coverage. Those were both standing cases, and this was the analysis. The case should be thrown out because the plaintiffs were indispensable. That's a far cry from Murray and Rousher, is it not? I don't think it is. I mean, I think if anything, what Murray says is that Treesdale is limited to Rule 24 intervention. And the Rule 19 analysis, of course, is different than the Rule 24 analysis. To my knowledge, the insured party, or I guess the injured party in Treesdale never brought the Rousher case to this court's attention in Treesdale. And really the discussion of anything having to do with Rule 19, which I would say is DICTA, in Treesdale is confined to a couple paragraphs at the end. And most of that discussion is fact-specific to that case. Really the only pronouncement, as Your Honor just noted, was that the interest is not one that would rise to the level of being a necessary party. But again, that language is when this court was asked which of these two precedents do we follow, basically, the way it reads at least, confined Treesdale to the Rule 24 intervention context. Mr. Oppenheim, if I may, I understand that the Illinois case is still pending. Is that so? That's correct, Your Honor. There are actually two Illinois cases. What makes this case any different than the Maryland Casualty v. Pacific Coal case, which I hope you're familiar with, that appeared in the Supreme Court where the case was still pending, the state case was still pending, and the Supreme Court said you cannot just dismiss this case claiming that there is mootness or any other problem because there is a controversy that still remains. Are you familiar with the Maryland case? I admit, Your Honor, that I am not. But from your description, it seems to me that there may not have been the critical element of the underlying resolution in the state court tort case with a covenant not to execute. And that's really what removes the case or controversy. And moreover... I don't understand that. I don't understand that, Mr. Oppenheim, because it seems to me that Cumberland brought an action against you. You sought to have Cumberland bring in another party. Cumberland says, we don't want any other party. You are insured. We brought an action to determine what our coverage was, period, which was the same thing in Maryland. And at that point, there was a disposition by Judge Tucker. And now you're saying, well, there was no case at all. So far as we're concerned, we're the fair-haired boys. We're out of the picture. You go fight with somebody that's not in the picture. And I read Maryland, which appears, I should give you the answer. Your Honor, I would imagine... That's besides anything else I have to say. Right. Well, one answer to that is that case predates by some 60, 65 years, this court's termination in State Auto v. Summey on the second piece of this that I haven't addressed yet, which is the abstention doctrine. And this court basically is squarely held that where... That's a discretionary doctrine, is it not, sir? It is, but this court laid down a standard... Mr. Oppenheim, didn't the district court have discretion and determine itself that the Pennsylvania law that somebody who sits in Pennsylvania and has determined that Pennsylvania law governs? And it is discretionary. It is not mandatory. So we would have to find an abuse. How is it abusive? For the same reason that this court found an abusive discretion in the Summey case itself. There's really nothing to distinguish this case from Summey other than perhaps the choice of law but I think Illinois... You haven't objected to that. Objected to which? Choice of law. We have actually. We fought choice of law. We think... But it's not on appeal before us. I think it's mentioned in the briefing that it's not a settled question, at least as far as it bears on the Summey analysis. But there is no issue of choice of law before us on appeal, correct? Um, I think the issue is whether the Summey abstention doctrine applies. And I think our position on that is the choice of law question doesn't take this case out of the Summey bailiwick. But to the extent there is Illinois in this particular case, where the underlying tort plaintiffs and the underlying tort case was in Illinois, and at least one of the insurers is an Illinois insurer, means that that court has just as much interest in the outcome of this action. I'm confused. You believe you've preserved the choice of law question or... I believe we have. All right. We'll hear from you on rebuttal. Thank you, Your Honor. Mr. Alpenheim... Go ahead. I have one thing I'd like Mr. Alpenheim to think about while he's sitting and preparing his rebuttal remarks. In the Supreme Court case in Bowles, Justice Thomas relied on the statutes, the statutes in determining that when a district court gave a direction or a permission to file an appeal late, he was out of order. And Bowles, as you probably know the case, held that despite that suggestion by the district court, nevertheless the appellate lost. But he depended upon the statutes, and he distinguished between the civil and the criminal laws on appeal, because there was no statute in the civil area, as there is none here that I know of. And I'm going to ask you to help me with that when you come back. And he said Bowles' failure to file his notice of appeal in accordance with the statute, therefore deprived the Court of Appeals of jurisdiction. And I would appreciate it so much when you return, if you would give me the statutory reference that permits you to appeal under those circumstances in that case. Thank you, Mr. Obama. Thank you, Your Honor. All right, counsel. Mr. Kozloff. May it please the Court, my name is Louis Kozloff, and I represent Cumberland Mutual Fire Insurance Company. I will be addressing the threshold issues of this Court's jurisdiction and abstention. Mr. Merrick, who represents Maryland Casualty Company, will address the necessary party and mootness issues. We've submitted a division of time as 8 minutes for me and 12 minutes for Mr. Merrick, but with the Court's permission, I'd like to revise that to 10 minutes for each of us. That's fine. Thank you. Is that all right? Yes, absolutely. Okay, and if we go over, we go over. Thank you. Starting as we must with jurisdiction, as a threshold matter, this Court must determine whether it has jurisdiction over the appeal. If not, it can go no further to decide the issues that Express Products has attempted to raise here. We submit that the Court lacks jurisdiction over all issues raised in this appeal because of Express Products' failure to file a notice of appeal within the statutory time constraint on this Court's jurisdiction, which has been established by Congress. With respect to Judge Garth's question about the statute that was discussed in Bowles, that statute is 28 U.S.C. Section 2107, which defines the jurisdiction of this Court, and it states that a notice of appeal must be filed in the district court within 30 days of the entry of the judgment, order, or decree to be appealed. This is echoed in Appellate Rule 4. Mr. Kozloff, what about Section 1291, the issue of finality here? Yes, I think— You know, if the September 1 order were standing alone, you know, even though it says, you know, another memorandum is anticipated, I probably would have no problem with the finality. But when the Court then, on the 22nd, files a memorandum and order that says presently before this Court are cross motions, and in its conclusion says the Court grants and grants and grants an appropriate order follows, not acknowledging that a, quote, a presumably final order was ever entered, wouldn't a party be within reason to doubt the intention of the Court as to the finality of the prior order? Well, I think the finality of the order is a key issue. I agree. With respect to your question about doubt, if there was doubt when the Court's September 22nd memorandum was issued, there are many things that express products could have done to protect itself and preserve its ability to appeal. First— But did it have to do that? Could it not look at the two orders in tandem and say, aha, I thought that the September 1 order might have been the last act anticipated, but clearly this is the last act, and maybe it's not even the last act because an appropriate order follows. Right. But it seems to me it certainly says, well, September 1 wasn't intended by the Court to be the last thing to be done. And then the appeal was filed within 30 days of September 22nd, so we don't have the problem of the appropriate order follows making it even less final than it otherwise would be. How do you respond to that? The September 22nd memorandum couldn't be the order of the Court set forth on a separate document that began the appeal period. Well, but that rule is protective to appellants. That's protective so that they're not blindsided and would have to file the appeal within 30 days of the memorandum in order. What we have here, though, is that they did file it within. And the second part of 58 really says, you know, the fact that it's not a separate document doesn't affect the appealability. So here, the appeal was filed, and I refer to it as a memorandum, but it says memorandum and order. Right. So it looks like it's, if not the last order, an additional order in addition to the September 1 order. I mean, definitely confusing, but on what basis do we foreclose? Under what authority do we foreclose an appellant in this situation when the Supreme Court precedent says that the inquiry is whether the lower court intended its ruling to have a final rather than tentative effect? Well, the September 22nd order did have a final effect. It concluded the case on the merits. The September 22nd order, yes. Yes. It resolved the case among all parties. Okay, and an appeal was filed within 30 days. Do you mean that exclusive of September 1st? Do you mean that September 1st was not and September 22nd was? Is that what you mean? No, Your Honor, I don't mean that. The September 1 order. It can only be one final. Final, final. You've got to be clear. It's like pregnant. Well, the memorandum, as the court stated, supported the decision that was previously issued on September 1. It was the supporting memorandum the court stated would be forthcoming in its September 1 order. But you acknowledge it has order language and it says grants. I mean, it's a memorandum in order. It does. It does, but the decision of the court, the judgment entered by the court was the September 1 order. It was a final decision at that point because it resolved all matters in dispute among all parties. And that was the final decision of the court. It was set forth on a separate document. It wasn't the final order. It was. The memorandum was. The docket reflects an order to September 22nd. There are loose words in the memorandum. But to the extent there was confusion, there were many things that Express Products could have done at that point  which the Supreme Court has stated there are no equitable exceptions to. First, it could have immediately filed the notice of appeal. And not even immediately. It had 11 days from September 22nd to file a notice of appeal. But the fact that it could have, I'm looking for why we say they are totally precluded and prohibited from having their appeal having filed within 30 days of September 22nd. The court's requirements on jurisdiction are strictly applied. The Supreme Court has stated that in many cases. That's finality. Is there any statute which changes the filing of 30 days based upon confusion, wonderment, surprise, whatever adjective or whatever verb you want to use. Is there any statute that Congress has passed that would fit within what Justice Thomas said in Bowles? He said, and I'll repeat it again, Bowles' failure to file his notice of appeal in accordance with the statute deprived the Court of Appeals of jurisdiction. Now, is there any statute that says if you're confused, if there is a misstatement of any sort by the district court. Indeed, Bowles came about with a direct statement from the district court which said you have until the 17th to file this appeal. He filed it on the 14th and it was too late. Is there any statute that you can direct us to? Yes, Your Honor. It's the same statute that was at issue in Bowles and that's 28 U.S.C. 2107. Not only does it say anything at all about confusion or wonderment or supposition. It gives a remedy if there is confusion. That remedy is a motion under Rule 4A5 that if there is excusable neglect or other good cause, the court can extend the time for filing a notice of appeal as long as that motion is brought within 30 days of the expiration of the appeal period. That 30 days beyond the expiration of the appeal period would have run on November 2nd. So if there is confusion on September 22nd based on the memorandum that was issued. And was there a motion? Excuse me? Was there a motion, sir, that was made? They filed a motion under Rule 58 and Rule 60, not a motion under Rule 4A5. And even that motion would have been untimely under the statute 2107 because it was not brought within the 30 days after the appeal period expired. Thank you. You're welcome. With the court's permission, I'd like to turn to the abstention doctrine and the merits. Assuming the court has jurisdiction, it should affirm the district court's order denying express products motion for judgment on the pleadings based on the Brill-Hart abstention doctrine. Your adversary says that he's preserved the choice of law question. He hasn't on the merits. He has raised the choice of law issue as it relates to the factors the court considers in Brill-Hart. But in terms of what law applies to the coverage dispute that has not been raised in this appeal, that has been waived. Pennsylvania law applies. The Eastern District Court in Pennsylvania was far superior to a court in New Jersey or Illinois to apply Pennsylvania coverage law to this dispute. And so that factor weighs in favor of the district court maintaining jurisdiction and not abstaining in favor of actions in New Jersey and Illinois. And with respect to the Illinois, I'm sorry, the New Jersey action, at the time the court decided the motion based on abstention, the action in New Jersey had been dismissed by the New Jersey State Court in deference to the action pending in the Eastern District of Pennsylvania. So when you look at Summey and you look at- Was that the basis, Mr. Kozlov, of the dismissal of the New Jersey action? Because the record doesn't disclose to me why the New Jersey action was dismissed. It was. It was based on comedy. The state court in New Jersey said this action is pending in federal court in Pennsylvania. Based on comedy, we will defer to the action in Philadelphia. Did it go through the factors of abstention? It wasn't an abstention- Consider abstention. It wasn't an abstention issue in the state court in New Jersey because- It was purely comedy. Yes, Your Honor. Is that it? Yes. Thank you. You're welcome. I see my time's expired. I'll yield to Mr. Mayor. All right, thank you. Did you all- Oh, no, you're not rebuttable. Go ahead. May it please the court. My name is Michael Merrick, and I represent Eppley Maryland Casualty Company. The two arguments that I'm here to address, as raised by Express Products, are that jurisdiction was lacking in the trial court because first, indispensable and necessary parties were not joined, that being the underlying class plaintiffs, and secondly, that there was not an adequate case or controversy to sustain jurisdiction. Both arguments lack merit. Rule 19 does not require that the underlying class plaintiffs or their representatives be joined as parties. Treesdale, the 2005 decision of this court, provides for the clear rule of law. Treesdale explains that for purposes of Rule 19, joinder of underlying plaintiffs is not necessary to a declaratory judgment action brought by an insurer against the insured. More specifically, this court held that Rule 19A1B provides the underlying plaintiffs who are not parties to the coverage action do not have an interest related to the subject of the action in the words of the statute, but merely have a financial interest. And Treesdale distinguishes those two things. The financial interest that an underlying plaintiff has as respects an insured who is insured by a liability policy is not the type of legally protected interest which gives them a right to appear. Or to be joined, excuse me. Now, there is a fundamental difference between Murray and Rousher and Treesdale. Murray and Rousher involve situations where the underlying plaintiffs were in fact joined. They were permissible parties, they were proper parties, but they were joined in the judgment of the insurer. Here, like in Treesdale, the insurers did not join the underlying plaintiffs. And what Treesdale said is, that's perfectly appropriate and the court is not deprived of jurisdiction under Rule 19. Now, there is a big difference between what was at issue in those cases, which is standing. And that is standing to raise defenses to the insurer's claims and Rule 19 considerations. Now, think about what was at issue in both Murray and Rousher. In both of those cases, you had a situation where the insurer was not actively litigating the coverage issue. In Rousher, for example, there was a default judgment entered against the insurer. And the question was, was that going to be binding on the underlying plaintiff? The Third Circuit, this court, had a real problem with that. And I think that was a case that, Your Honor, Judge Garg, you participated in. And so that helped. I wrote it. And that informed much of the discussion that they were parties, but the question was, could they be foreclosed from arguing their position? So those cases are clearly distinguishable? It is, Your Honor. And I would like you to take a look to a recent decision that came down from the district court. Judge Bailson issued a decision called Hartford v. Cardenas. This came out a couple months ago after the briefing was concluded. It's a 2013 Westlaw 115-8590. And Judge Bailson does a terrific job going through the very arguments that the appellants are making here and shows why there's a fundamental distinction between Tresdale and between Murray and Rousher, on the other hand. I could go through some of that if you'd like, but what he points out, he does it much better than I could, is that any suggestion Murray supporting the Rousher notion that plaintiffs, the argument that plaintiffs have to be part of the case, it can't override the crystal, what he calls the crystal clear language of this court in Tresdale. And he says that it's dicta. Anything that is being argued here is really dicta in the Rousher case. That's right. And really where the confusion lies, Judge Rundell, is a mere footnote from the Rousher case where this court had said, well, the Rule 19 consideration supported its view. And really it's interesting to note, and Mr. Oppenheim may have misspoken, but he said that the parties to the case in Tresdale never cited Rousher. Well, presumably with the record before him, Judge Bailson went back and looked and he commented that in fact the parties cited Rousher to Tresdale and it was very significant to him that Tresdale never even cited Rousher. So they really stand as two separate and independent lines of cases and we're bound here by the Tresdale decision. With respect to this notion that there's no case or controversy here, I guess the question is  for all these years? If there's no case or controversy, why did we have so much motion practice by way of judgment on the pleading summary judgments that were fought by express products if they had no interest in what's going on in this courtroom? They have a very real and tangible interest and there can be no argument that there's no case or controversy. Judge Rendell, you made note of the fact that there's no assignment here. That's a very important point. The argument made by express is that somehow they no longer have any interest because all rights have effectively been passed to the underlying plaintiffs. Well, they haven't. A covenant not to execute is markedly different from an assignment. Their argument might be different, potentially might be different if there were an assignment, but it's not. They don't possess those rights. Express still has rights in these policies and you asked the question, Judge Rendell, Mr. Oppenheim, whether Maryland is in fact seeking the defense costs that it paid. We are. The merits of that don't matter so much. What does matter is that we have a dispute on that point. As to the duty to indemnify, that remains a very open and important issue. There's roughly $8 million at issue that is being sought by express through this lawsuit and the underlying plaintiffs and there's a very active controversy on that point. Now, the impact, the ultimate impact of this court's merits is something we'll address for a different day as respects the underlying plaintiffs, okay, but certainly the carriers are entitled to the judgment that they receive from the district court as respects express products and its demands for coverage. Your Honor, if there's nothing else in terms of questions from the court, I'd simply ask that the court either grant or affirm the judgment below on the merits or dismiss the appeal as untimely. We still would have the 60B appeal though, the appeal from the last order of the court, would we not, Mr. Oppenheim? You said there's still, whether we had jurisdiction or not, there still was a proper appeal from one part of the court's order,  That's correct, Your Honor. There's a separate appeal from that order. To address the issues on rebuttal and order, with respect to the jurisdiction in Judge Garth's question, I think the difference between this case and Bowles is this is not a situation where it's a question whether there should be some excuse for not appealing from what is clearly a final order in time. It's a question of, was there or was there not a clear final order outside of the 30-day period allowed for in the statute? What is it about the memorandum on September 22nd that struck you as a final order? Well, and I think Judge Rundell in her questioning got to a lot of those points. It says memorandum and order. It doesn't refer back to the previous order entered. Is it in any way inconsistent with the September 1st order? In terms of the merits, I think it comes to the same ultimate place. But again, I mean, district judges issue superseding orders all the time. Well, but it wasn't labeled superseding order, right? It was labeled memorandum and order. And what I'm trying to discern is what is it about that memorandum on the 22nd that struck you as, this is the document which speaks with finality in a way that is distinct from what you saw on September 1st. I would say the concluding language. And again, I mean, What concluding language? That this is, it's the order of the district court and that, moreover, that an appropriate order is even to follow. But if you were struck and confused by an appropriate order will follow, then why did you file within 30 days of the September 22nd document that you said shows finality? Because you would have filed at some later period of time. Or maybe you would have filed under 4A-5 as your adversary suggested because of some inability to discern what had happened. That may have been a better course. Ultimately, we took a look at what we got on September 22nd. We waited to see if we would get our final order. We never did. It is a prophylactic measure. We went ahead and made sure that we filed within 30 days from the September 22nd order, which again was itself. Entered within 30 from the original September 1 order. Therefore, there is no question that the court had jurisdiction. I have one follow-up because I was confused about an exchange you had with Judge Rendell. If we find that we have no jurisdiction, what is left? While there is a separate appeal, we went and asked for Rule 60 relief from the district court, which we can do and the district court denied it, although admitting that her loose language was in error. And so we appealed that. In the March, you're appealing from the March order. Correct, Your Honor. And you filed that within 30 days. Very briefly, with regard to abstention. Before you go on, Mr. Oppenheim, I had asked you to identify the statute that was the fundament of the rule. Identify the statute that Congress passed, which talks in terms of uncertainty or suspicion or wonderment or lack of knowledge. You haven't told me the statute. 28 U.S.C. section 1291, requiring a final order of the district court. With regard to- Twenty-one? I thought 1291. Pardon? Section 1291, Your Honor. No, I thought that we were talking about the 30-day statute. Well, that's definitely section 2107. I don't think there's any question that there's another statute. And is there, there is no other statute. That's what I want to know. Yeah, yeah. Thank you. Thank you, Your Honor. Quickly, with regard to abstention, Summi- Very quickly. Okay, Summi talks in terms of a state court. We unquestionably have a state court looking at these actions. They existed at the time of the district court's judgments. And moreover, each of those state courts affirmatively denied insurers' motions to dismiss asking for deference to the EDPA actions to these cases. And with regard to the indispensable party argument, the point I was trying to make before is that Semtec says the effect of this judgment is governed by Pennsylvania state law. In Pennsylvania state law, as stated by the Supreme Court in Vail, a judgment entered in a coverage case without the underlying tort plaintiff's presence is a void judgment. So under Semtec, this judgment's a void judgment. And I respectfully suggest that because this court does not issue advisory opinions, the judgment should be reversed and the case dismissed. Thank you, Your Honors. All right, we'll take the case under advisement. Judge Rindell. Yes. Judge Rindell.